ALFRED BRADY, PLAINTIFF-APPELLANT, v. CITY OF BAYONNE, EDWARD F. CLARK, MAYOR, THOMAS DI-DOMENICO, GEORGE PRENDEVILLE, FRANK CAMP-BELL AND STANLEY FRYCZYNSKI, MEMBERS OF THE BOARD OF COMMISSIONERS OF THE CITY OF BAY-ONNE AND CLYDE POTTS ASSOCIATES, DEFEND-ANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued May 4, 1953—Decided May 28, 1953.

Before Judges EASTWOOD, BIGELOW and JAYNE.

*Mr. Isadore Glauberman* argued the cause for the plaintiff-appellant.

*Mr. Alfred Brenner* argued the cause for the City of Bayonne *et als.*

*Mr. Harold A. Price* argued the cause for Clyde Potts Associates (*Messrs. Scerbo, Porzio and Kennelly,* attorneys; *Messrs. Frank C. Scerbo* and *Ralph Porzio,* of counsel).

The opinion of the court was delivered by

EASTWOOD, S. J. A. D.    The issue raised by this appeal challenges the validity of a resolution adopted on September 23, 1952 by the Board of Commissioners of the City of Bayonne (hereinafter referred to as the "board"), authorizing the superseding of a contract made in 1949, and the execution of a new contract between the city and Clyde Potts Associates, an engineering firm (hereinafter referred to as "Potts Associates"), at a fee of 7% of the cost of construction of a sewer system.

On December 6, 1949 the board adopted an ordinance appropriating $200,000 for the purpose of financing the cost of preliminary engineering services necessary for the

construction of intercepting sewers and disposal works. On December 28, 1949 the board adopted a resolution authorizing the employment of Potts Associates as engineers "* * * to prepare plans and specifications for the erection and construction of Sewage Treatment Works and Intercepting Sewers, * * *" and on December 30, 1949 a contract of employment was entered into, providing that a commission fee of 7% of the cost of construction be paid for all engineering services essential to the complete construction of the project. The sum of $150,000 was paid to Potts Associates on account of services rendered in the preparation of the preliminary plans and specifications. On April 15, 1952 the board, having determined from the preliminary engineering work the nature and scope of the proposed improvement and enlargement thereof, adopted an ordinance authorizing the issuance of $10,000,000 of bonds to finance the cost thereof.

Thereafter, on September 23, 1952 the Board adopted a resolution awarding the general contract for the construction of the sewage system for the sum of $8,836,731, and also adopted a resolution authorizing the execution of a new contract to supersede the 1949 contract with Potts Associates, the form of which was approved by the aforementioned resolution. The 1952 contract provides for compensation to the engineering firm on the same basis as the 1949 contract, to wit, at the rate of 7% of the total construction costs.

The plaintiff, a taxpayer, instituted an action in lieu of a prerogative writ, wherein he alleged the invalidity of the 1952 resolution authorizing the execution of the superseding contract.

The Law Division held that the contract of December 30, 1949 was null and void by reason of *R. S.* 40:2–29; that the resolution of September 23, 1952 was legal and valid, and that it is within the corporate power of the city to enter into and execute the proposed new contract with Potts Associates. The plaintiff appeals from the ensuing judgment.

The plaintiff contends that: (1) the 1952 resolution and proposed contract are invalid (a) as violative of *R. S.* 40:1–59

and 40:50–6, and (b) that they would result in a gift from the city to the engineering firm; that (2) the trial court erred in precluding the plaintiff from interrogating members of the board as to why the best interests of the city would be served by superseding the 1949 contract; and that (3) it was erroneous to hold that the 1949 contract was invalid.

The trial court noted in its opinion that the only issue in the proceeding was "the legality of the resolution of September 23, 1952" and stated: "This is fundamentally and primarily, and, in fact, the only question directly before the court." With this statement we agree.

The validity and efficacy of the resolution of September 23, 1952 being in question, we turn to an examination thereof and the manner in which it was enacted.

The ordinance of April 15, 1942 appears to have been regularly and properly enacted and is not challenged by the parties. Thereafter, and to effectuate the program called for, bids having been advertised for and submitted, the resolution of September 23, 1952 was adopted authorizing the award of contracts for construction of the system. Similarly, a resolution was adopted on that date authorizing the execution of the superseding contract.

The appellant contends that the 1952 resolution is invalid, for the reason that the 1949 contract (the validity of which he concedes), binds Potts Associates to perform all of the engineering services for the sum of $200,000 and, therefore, the proposed contract would violate the statutory mandates and result in the making of a gift by the city to the engineers. To determine the question, we must give consideration to the effect of the 1949 contract. By virtue of the provision of the ordinance, the contract was necessarily limited to payment for the engineers' services in the preparation of the preliminary plans and specifications. The enabling ordinance and resolution adequately support that conclusion, in that the 1949 ordinance recites the determination to improve and enlarge the sanitary sewer system, to employ engineers to prepare preliminary plans and specifications, and to provide necessary funds to finance the cost of

said services, and the enacting clauses of the ordinance effectuated the foregoing recitals. The 1949 contract recites the desire of the board to employ a competent engineer "* * * to make necessary surveys, investigations, maps, plans, specifications, estimates and reports relating to the construction of intercepting sewers and disposal works * * *," engaging Potts Associates to perform that work, and providing for payment on the basis of 7% of total construction costs and also the manner in which payments for the preliminary services are to be made. It must be conceded, of course, that under the 1949 ordinance and resolution the expenditures could not exceed the sum of $200,000. In 1949 the proposed improvement was for only the eastern portion, estimated to cost $3,500,000, whereas in 1952 the cost of the construction authorized amounted to almost $9,000,000.

"* * * The design of the parties to a written contract is to be collected from the instrument as an entirety. * * * in the quest for the common design, the situation of the parties, the attendant circumstances, and the objects they were thereby striving to attain, are to be regarded." *Mantell v. International Plastic Harmonica Corp.,* 141 *N. J. Eq.* 379, 386, 387 (*E. & A.* 1947). See also *Cameron v. International Alliance, &c., U. S. & Canada,* 119 *N. J. Eq.* 577, 587 (*E. & A.* 1936) ; *Williston on Contracts, sec.* 619, *Contracts, A. L. I., sec.* 236.

That contracts for the effectuation of a municipal improvement are a proper and valid governmental function cannot be denied, and that the contracts in question are municipal improvement contracts is equally unquestionable. The procedure adopted to provide the necessary finances to properly meet the cost of construction, as well as additional engineering costs, had been lawfully enacted pursuant to the requirements of *R. S.* 40 :2–29 and 40 :50–6. *Samuel v. South Plainfield,* 136 *N. J. L.* 187, 190 (*E. & A.* 1947). Where the purpose of the appropriation is clearly a public purpose and the statutory provisions regarding the means adopted to expend that appropriation have been properly met,

as here, the court will not censor the governmental action except where the same is arbitrarily or capriciously exercised.

"* * * Generally, a public purpose has for its objective the promotion, *inter alia*, of the 'general welfare, security, prosperity, and contentment of all the inhabitants or residents' of the municipality; and the determination of what constitutes a public purpose is primarily a legislative function, subject to review and correction by the courts only when the action taken is arbitrary or capricious. 37 *Am. Jur.* 734, 735. * * * The question before us is the existence *vel non* of the power represented by the resolution, not the propriety of the things done in its exercise. * * * Censorship is not of the judicial function. Where the action taken is not clearly capricious, the local legislative body is accountable only to its constituency." *City Affairs Committee v. Board of Com'rs. of Jersey City*, 134 *N. J. L.* 180 (*E. & A.* 1946), at *pp.* 182, 183.

We find that the resolution of September 23, 1952 was not arbitrarily or capriciously enacted and under the authority recited hereinabove, it was valid and enforceable. Of course, payment to the engineers is subject to a deduction of $150,-000 heretofore paid to them.

██ We turn now to a consideration of the plaintiff's contention that the trial court erred in precluding the plaintiff from interrogating members of the Board as to why the best interests of the city would be served by superseding the 1949 contract. It must be borne in mind that at the time of the adoption of the 1952 resolution the board had ascertained that the total construction cost would amount to approximately the sum of $9,000,000. The question was then raised by the city's legal department as to whether the 1949 ordinance was legally sufficient to authorize and provide the necessary funds for the payment of all of the engineering services. Mr. William Rubin, a member of the legal department, testified that the doubtful efficacy of the 1949 ordinance and resolution was communicated to the board with the recommendation that a new contract with Potts Associates be entered into, to the end that the aforementioned legal question might be resolved. Whereupon, the 1952 resolution was adopted. No charge of fraudulent conduct or lack of good faith on the part of the members of the board was made

at any time by the plaintiff, nor did he submit any proof that the 7% commissions agreed to be paid to the engineering firm are unlawful. He merely expressed the opinion that a commission of 5% would be sufficient. The plaintiff cites the case of *Driscoll v. Burlington-Bristol Bridge Co.*, 8 *N. J.* 433 (1952) (involving the purchase of two interstate bridges), in support of his contention that he should have been permitted to interrogate the members of the board. However, an examination of the *Burlington-Bristol Bridge* case does not support his contention. In that case, it was *charged* that the board of freeholders and the bridge commissioners were guilty of consummating a transaction by means of fraud and corruption, and the Supreme Court so concluded. Here, no such issue was before the court. Assuming, *arguendo*, that the court should have permitted the interrogation, we find that the plaintiff suffered no prejudicial harm in its exclusion.

As heretofore stated, the question of the validity of the 1949 contract was not an issue before the trial court. In fact, the parties concede its validity, differing only as to the legal effect thereof. The judgment in that respect must be reversed.

The other contentions of the appellant are without merit.

The judgment of the Law Division is affirmed as to that portion which holds the September 23, 1952 resolution valid and reversed as to that portion which holds the December 30, 1949 contract void.